MEL:JRS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

MIKE PHILESTON,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**AFFIDAVIT AND COMPLAINT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT**

Case No. 19-MJ-700

(18 U.S.C. § 922(g)(1))

EASTERN DISTRICT OF NEW YORK, SS:

      MICHAEL A. McCARTHY, being duly sworn, deposes and states that he is a Detective with the New York City Police Department, duly appointed according to law and acting as such.

      On or about March 25, 2019, within the Eastern District of New York, the defendant MIKE PHILESTON, knowing that he had been previously convicted in a court of one or more crimes punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess in and affecting interstate or foreign commerce, a firearm, to wit, a loaded Raven Arms semi-automatic pistol.

      (Title 18, United States Code, Section 922(g)(1))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Detective with the New York City Police Department ("NYPD") and have been involved in the investigation of numerous cases involving the recovery of firearms and ammunition. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation. Where I describe the statements of others, I am doing so only in sum and substance and in part.

2. On or about March 25, 2019, at approximately 6:00 p.m., the defendant MIKE PHILESTON came to the door of a business in Brooklyn, New York. Through the locked glass door of the business, the defendant brandished a firearm and threatened the employees of the business.

3. One of the employees ("Victim-1") called 911 and reported that a black man in a blue tracksuit was brandishing a firearm and had threatened to "violate" the employees. Victim-1 stated that the individual had a dark complexion, was possibly 40 years old and approximately five feet ten inches tall.

---

[1] Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, I have not set forth every fact learned during the course of this investigation.

4. Within minutes of the call, two New York City Police Officers — Officer-1 and Officer-2 — responded to the scene.[2] Officer-1 told one of the employees ("Victim-2") to get into the car with them and then drove in the direction the victims had seen the defendant run. The officers and Victim-2 soon saw the defendant running on the sidewalk in a blue tracksuit. While pursuing him in the car, Officer-1 and Officer-2 saw the defendant holding what appeared to be a firearm.

5. The defendant ran into a driveway and the officers attempted to follow him on foot but lost sight of him. The officers radioed that an individual with a firearm was at large in the area, resulting in numerous other officers — including canine units and a helicopter — coming to the area to assist in the search and prevent the defendant from fleeing.

6. One of the officers who arrived was Sergeant-1. While on scene, Sergeant-1 knocked on the doors near the driveway the defendant had run onto. At one of the doors, an individual ("Individual-1") answered and declined to allow the police to search inside her home.

7. Shortly later, Individual-1 came out of the house and told Sergeant-1, Officer-2 and others that she was leaving to pick her children up from school. The police again asked Individual-1 if they could search her home and this time she agreed.

---

[2] Because multiple law enforcement personnel were involved in the arrest of this defendant, I refer to the relevant individuals as Officer-1, Officer-2 and Sergeant-1 for ease of reference. The identities of each of these individuals are known to the affiant, and I and/or another law enforcement officer have interviewed each of these individuals about the events set forth herein.

8. The police entered Individual-1's home and found the defendant hiding in his underwear inside a bedframe in a bedroom in the home. The defendant and Individual-1 were placed under arrest.

9. Following the arrest, the defendant was dressed and shown separately to two of the victims for identification. One of the victims did not identify the defendant. The other victim said that he had seen the gun and the back of the defendant's head but had not seen his face and could not identify him.

10. Later that night, Officer-2 swore to an affidavit in support of a warrant to search Individual-1's home for a firearm, which warrant was granted by the Honorable Adam Perlmutter of the Kings County Criminal Court.

11. After receiving the warrant, Officer-2 informed the defendant that the police had obtained a warrant and would be searching Individual-1's home and that if the defendant did not tell the officers where the gun was, both the defendant and Individual-1 would be charged with criminal possession of a weapon. The defendant stated, in sum and substance, that the police should let Individual-1 go because the firearm was his and that there was no reason to search the house because the firearm was in the garbage can.

12. Officer-1, Officer-2 and others executed the search warrant and found a loaded Raven Arms semi-automatic pistol in a garbage can in Individual-1's home. A photograph of the firearm was shown to one of the victims, who confirmed that it was the firearm the victim had seen the defendant brandish. The search of the home also found approximately 260 grams of marijuana, numerous tablets of alprazolam (i.e., Xanax) and over a dozen fake credit cards and drivers' licenses.

13. The next morning, the defendant was read his <u>Miranda</u> rights, which he waived. The defendant was then interviewed, and he admitted that the firearm was his. The defendant also provided a DNA sample.

14. The Office of the Chief Medical Examiner (the "OCME") compared the defendant's DNA sample to DNA found on the firearm recovered from Individual-1's home. The OCME concluded that the defendant's DNA was present on the firearm.

15. I have reviewed the defendant's criminal history, which revealed that on or about February 27, 2008, in Kings County Supreme Court, the defendant was convicted of assault in the second degree, with intent to cause physical injury with a weapon, in violation of New York Penal Law 120.05(02), a class D felony, which I know to be a crime punishable by a term of one year or more, and was sentenced to a term of two years' imprisonment.

16. I have conferred with a Nexus expert, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), who has informed me, in substance and in part, that the Raven Arms semi-automatic pistol recovered in this case was manufactured outside the state of New York.

<u>REQUEST FOR SEALING</u>

17. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant, as disclosure would give the target of the investigation an opportunity to destroy evidence, harm or threaten witnesses, change patterns of behavior, notify confederates and flee from or evade prosecution and therefore have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness.

WHEREFORE, your deponent respectfully requests an arrest warrant for the defendant MIKE PHILESTON so that he may be dealt with according to law.

*[signature]*
MICHAEL A. McCARTHY
Detective
New York City Police Department

Sworn to before me this
6th day of August, 2019

_____
THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK