```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA,
                                              Memorandum and Order

          - against -
                                              19-CR-397(KAM)

MIKE PHILESTON,

                    Defendant.

-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

        Defendant Mike Phileston ("Mr. Phileston") brought a *pro se* motion for "compassionate release" from prison, in light of the global COVID-19 pandemic, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 42.) The government opposes the motion. (*See* ECF Nos. 43, 44.) For the reasons herein, Mr. Phileston's motion is respectfully DENIED.

## Background

        The court assumes familiarity with Mr. Phileston's criminal conviction. According to the government's allegations, in March 2019, the police were called after an individual, who was later identified to be Mr. Phileston, brandished a firearm and made threats directed at employees of a business in Brooklyn, New York. (ECF Nos. 43, 44, Government's Opposition ("Opp."), at 1.) Several years prior to his arrest for this incident, in 2006, Mr. Phileston was convicted of criminal

1

possession of a loaded firearm in the third degree, in violation of New York law. (*Id.* at 2.) In 2007, he was convicted of assault in the second degree in violation of New York law. (*Id.*) Based on these two previous convictions, Mr. Phileston was charged by indictment for the 2019 incident with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (ECF No. 8, Indictment.) Mr. Phileston entered a plea of guilty to the sole count, pursuant to a plea agreement with the government, on February 20, 2020. (ECF No. 24, Minute Entry.)

This court sentenced Mr. Phileston on November 6, 2020. (*See generally* ECF No. 41, Transcript of Nov. 6, 2020 Sentencing ("Sent. Tr.").) At sentencing, the court independently calculated the United States Sentencing Commission Advisory Guidelines as calling for a term of imprisonment between 30 and 37 months, based on Mr. Phileston's offense level and criminal history. (*Id.* at 21-22.) The court imposed a below-Guidelines sentence of 12 months and one day in prison, to be followed by two years of supervised release. (*Id.* at 31-32.) Mr. Phileston began serving his custodial sentence at FCI Fort Dix on January 11, 2021. (ECF No. 40, Letter.)

On March 15, 2021, the court received a letter from Mr. Phileston, which it construed as a *pro se* motion to modify his sentence. (ECF No. 42, Motion for Sentence Modification

2

("Mot.").) The motion requested that Mr. Phileston be re-sentenced to time served, or to serve the remainder of his custodial sentence in home confinement, due to the risks posed in prison by the COVID-19 pandemic. (*Id.* at 1-2.) The court invited Mr. Phileston's defense counsel to supplement his motion, and the government to respond to it. (ECF Dkt. Order Mar. 19, 2021.) Defense counsel did not file any supplement to the motion, and the government opposed the motion. (ECF Nos. 43, 44, Opp.) Mr. Phileston filed a reply to the government's opposition. (ECF No. 45, Letter Reply ("Reply").)

### Legal Standard

The First Step Act, 18 U.S.C. § 3582(c), also known as the "compassionate release" statute, created an exception to the general prohibition against modifying a term of imprisonment once it has been imposed. Under the statute, a defendant may move a court to "reduce" a term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement, U.S.S.G. § 1B1.13, allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person

3

or to the community, as provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement." However, U.S.S.G. § 1B1.13 does not limit the district court's discretion.  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  "[[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *Id.*

In addition, when considering a sentence reduction, the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)"), including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (3) the need for the sentence imposed to protect the public from further crimes of the defendant, and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." *United States v. Schultz*, No. 17-cr-193 (WMS), 2020 WL 2764193,

4

at *2 (W.D.N.Y. May 28, 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020)).

## Discussion

### I. The Conditions at FCI Fort Dix

The primary issue raised by Mr. Phileston in his motion for a modification of his sentence is the risk posed by the COVID-19 pandemic. Mr. Phileston advises that he tested positive for COVID-19 upon his arrival at FCI Fort Dix on January 11, 2021. (Mot. at 1.) He states that he has not been tested again, and that it is "impossible to practice social distancing in" prison, because he shares a bunk bed with another inmate "in a 12-man room." (*Id.*) According to Mr. Phileston, several inmates from his unit have contracted COVID-19, and he alleges that some have done so for a second time. (Reply at 1.) Mr. Phileston further states that he is "concerned for [his] well[-]being," and he contends that his senses of taste and smell have not returned since his positive test. (Mot. at 1.) Mr. Phileston also argues that "FCI Fort Dix continues to downplay the outbreak and deny compassionate release." (*Id.* at 2.)

This court is concerned for Mr. Phileston's health, as it is for all inmates during the unprecedented global COVID-19 pandemic. The court is relieved to learn that, after testing positive upon his arrival, Mr. Phileston apparently avoided the

5

worst possible outcomes associated with COVID-19, although he submits that his senses of smell and taste have yet to return.

What is crucially missing from Mr. Phileston's motion, however, is a showing of "extraordinary and compelling reasons" to modify his sentence, which is required under the compassionate release statute. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Because Mr. Phileston tested positive on the day that he arrived at FCI Fort Dix, that means that he likely contracted COVID-19 prior to his arrival, before he entered the facility. Eleven days after testing positive, Mr. Phileston reported to prison staff that he was experiencing no symptoms (*see* Opp., Ex. A, at 3), contradicting his current claim that his senses of smell and taste have not returned—a claim for which he has provided no support in the form of medical documentation. There is no indication that Mr. Phileston has contracted COVID-19 again.

Mr. Phileston argues that the prison has not handled the pandemic well, and that the former warden of the facility was reassigned earlier this year, which media reports have linked to the facility's handling of the pandemic.[1] At the time the former warder was reassigned, the facility had experienced an outbreak of about 800 cases in the span of a few months; now,

---

[1] *See* Briana Vannozzi, *Warden at Fort Dix reassigned amid COVID-19 outbreak*, NJ SPOTLIGHT NEWS, Feb. 2, 2021, https://www.njspotlight.com/video/warden-at-fort-dix-reassigned-amid-covid-19-outbreak/.

6

the Bureau of Prisons reports that there are currently 15 active cases of COVID-19 among inmates at FCI Fort Dix, with 43 active cases among staff.[2] These numbers, as Mr. Phileston points out, do suggest a recent and concerning increase in the number of cases at FCI Fort Dix, although not one of the magnitude the facility experienced in late 2020 and early 2021. The court notes that there are approximately 2,600 inmates at FCI Fort Dix,[3] meaning that 15 active cases accounts for approximately 0.5% of the total population.

Importantly, Mr. Phileston has not shown or argued that he has an underlying condition that would place him at a heightened risk of death or serious complications from COVID-19. Mr. Phileston, who is 33 years old, did not claim in his motion, nor in his reply, to have an underlying condition. At the time of his sentencing, he told the Probation Department that he was "healthy and reported no chronic illnesses or medical conditions." (ECF No. 32, Presentence Investigation Report, ¶ 38.) Although the court is hopeful that Mr. Phileston will not contract COVID-19 again, he has not shown that he would be unlikely to recover, or would that he would face increased risks, from COVID-19.

---

[2] *See* BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed Apr. 5, 2021).

[3] *See* BOP, FCI Fort Dix, https://www.bop.gov/locations/institutions/ftd/ (last accessed Apr. 5, 2021).

7

The risk of COVID-19, unfortunately, is one that we have all faced for more than a year, and the court recognizes that managing the risk is particularly challenging in a prison setting. However, the risk does not, on its own without a showing of a heightened risk due to a co-morbidity and other factors, constitute an "extraordinary and compelling reason[]" to modify a prison sentence. *See United States v. Espinal*, No. 08-cr-242 (ARR), 2020 WL 2092484, at *3 (E.D.N.Y. May 1, 2020) ("Absent evidence that the COVID-19 pandemic poses a heightened risk to [the defendant] in particular, rather than to the imprisoned population in general, . . . [the court] cannot conclude that the 'extraordinary and compelling reasons' element is satisfied."); *United States v. Okpala*, No. 17-cr-533 (CBA), 2020 WL 1864889, at *2 (E.D.N.Y. Apr. 14, 2020) ("the COVID-19 pandemic does not provide a medical basis for [the defendant]'s requested compassionate release" where "[h]e is not in an at-risk population for the virus").

Mr. Phileston also argues that the water at FCI Fort Dix is "contaminated," citing a recent lawsuit by the New Jersey Attorney General's Office. (Reply at 2.) The lawsuit cited by Mr. Phileston is part of a multi-district litigation consolidated in the U.S. District Court for the District of South Carolina, and the State of New Jersey alleges that the federal government failed to meet the State's standards for the

8

levels of perfluorooctane sulfonic acid and perfluorooctanoic acid in the drinking water that was provided at federal government facilities in New Jersey.  (*See generally In Re Aqueous Film-Forming Foams Prod. Liab. Lit.*, Case No. 18-mn-2873 (D.S.C.).)  The litigation remains ongoing.  There has been no showing by Mr. Phileston, however, that the situation presents "extraordinary and compelling reasons" to modify his sentence.  The State of New Jersey's lawsuit at this stage is still an allegation that has not been proven.

Accordingly, although the court is concerned about the conditions at FCI Fort Dix, it does not find that the conditions warrant a modification of Mr. Phileston's sentence at this time.

### II. Section 3553(a) Factors

The court must also consider the Section 3553(a) sentencing factors, including, *inter alia*, the nature and circumstances of the offense, Mr. Phileston's criminal history, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from potential future crimes committed by Mr. Phileston.  *See* 18 U.S.C. § 3553(a).  Even though the conditions at FCI Fort Dix are concerning, particularly the recent increase in COVID-19 cases, the statutory sentencing factors weigh against Mr. Phileston's early release from prison.

The court considered the sentencing factors at the time of sentencing, and found that a sentence fairly well below the range recommended by the advisory Guidelines (30 to 37 months) was appropriate, because Mr. Phileston accepted responsibility for his offense and expressed a desire, and was taking steps, to rehabilitate himself, which the court found to be meaningful.  (*See* Sent. Tr. at 31.)  However, given the nature of his offense, and his two prior convictions, one of which also involved a firearm and one of which involved an assault, a sentence of any less than the 12 months and one day would fail to reflect the seriousness of the offense, deter criminal conduct, and protect the public.  Using firearms in the manner that Mr. Phileston did in this case and in connection with one of his prior convictions presents a grave threat to public safety, as gun violence remains far too prevalent in our society.  The court does not believe that Mr. Phileston should be defined by these actions.  It does, however, find, as it did at the time of sentencing, that these actions warrant a prison sentence of 12 months and one day.

The court is hopeful that Mr. Phileston will be able to live a fulfilling and law-abiding life upon his release from prison.  At present, however, he has served less than three months of his prison sentence.  *See United States v. Butler*, -- Fed. Appx. --, 2021 WL 1166001, at *2 (2d Cir. Mar. 29, 2021)

("[I]t is entirely within the district court's discretion to consider how much time an inmate has already served of his overall sentence when the court is weighing whether a release for extraordinary and compelling circumstances is consistent with the Section 3553(a) factors, such as the need for deterrence and the danger posed to the community by the inmate's release."). The court finds that modifying Mr. Phileston's sentence before even a quarter of it is complete would not serve the interests of justice.

## Conclusion

For the foregoing reasons, Mr. Phileston's motion is respectfully DENIED. Mr. Phileston has not made a showing of "extraordinary and compelling reasons" warranting a modification of his sentence, and the relevant sentencing factors weigh against a modification of his sentence. The Clerk of Court is directed to mail a copy of this Memorandum and Order to Mr. Phileston, and to note the mailing on the docket.

**SO ORDERED.**

Dated:    Brooklyn, New York
          April 5, 2021

                                          /s/
                                     Hon. Kiyo A. Matsumoto
                                     United States District Judge